# PAPA, DePAOLA and BROUNSTEIN

*Attorneys at Law*
42-40 Bell Boulevard
Bayside, New York 11361
Suite 500

(718) 281-4000
FAX (718) 281-4030

John P. Papa
John R. DePaola
Steven L. Brounstein
----
John Kouroupas
Associate

Paula Fudge
Madeline M. Wrzesc
Legal Assistants

April 3, 2008

Via ECF

Hon. Barbara S. Jones
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY

Re:   United States v. Derrick Nembhard -07 Cr.# 584(BSJ)

Dear Judge Jones:

I respectfully submit this letter and attachments on behalf of my client, Derrick Nembhard, who is scheduled to be sentenced by the Court on April 11, 2008[1].

I have reviewed the Pre-Sentence Report (PSR), the addendum and the recommendation of the Department of Probation with Mr. Nembhard. We have several objections to the contents contained therein.

On September 26, 2007, Mr. Nembhard pleaded guilty to 8 USC 1326(a) and (b)(2), the sole charge on the indictment (Exhibit A). A plea agreement between Mr Nembhard and the Government was not entered into but the Government submitted a letter pursuant to United States v. Pimental, 932 F.2d (2nd Cir. 1991) indicating its position that Mr. Nembhard's adjusted offense level was seventeen (17) and that his criminal history was three (3). That calculation was premised on a base offense level of eight (8) pursuant to 2L1.2(a), with an increase of twelve levels (12) pursuant to U.S.S.G. 2L1.2(b)(1)(B) predicated on Mr. Nembhard's conviction of Criminal Possession of a Controlled Substance in the Third Degree in New York State Supreme Court Bronx County in August of 1991 for which he received a sentence of

---

[1] Enclosed are several letters written on behalf of Mr. Nembhard. We ask the Court to consider them although they were addressed to Mr. Nembhard's prior counsel. For the convenience of the Court, the handwritten letters have been typed by my office.

imprisonment of one year. The Government then accorded Mr. Nembhard a three level reduction to his offense level pursuant to U.S.S.G. 3E1.1(a) and (b) for acceptance of responsibility. This resulted in the Mr. Nembhard's having a total offense level of seventeen.

The Government's calculation of my client's criminal history follows: four (4) criminal history points accorded for Mr Nembhard's numerous New York State marijuana related convictions[2]. An additional two (2) criminal history points are added for the 1991 conviction for Attempted Sale of a Controlled Substance in the Third Degree in New York State Supreme Court Bronx County for which Mr. Nembhard received a sentence of one year. Six criminal history points place Mr. Nembhard in Criminal History Category Three (3). The Government's position is that Mr. Nembhard is facing a sentence of thirty (30) to thirty seven (37) months of incarceration pursuant to the guidelines.

The Pre-Sentence Report (PSR) prepared by the Department of Probation on November 8, 2007 is in accord with the Government as to the offense level but takes a different and harsher stance on the criminal history points and category. The PSR agrees with the Government's analysis that Mr. Nembhard receives four (4) criminal history points for his numerous marijuana convictions. However, the PSR (see Par. 25 and 27) accords four (4) criminal history points for the 1991 convictions as opposed to the Government's position that Mr. Nembhard should receive two (2) criminal history points. Probation's position is premised upon their finding that Mr. Nembhard received two concurrent one (1) year sentences on August 7, 1991 each one mandating two (2) additional criminal history points. Based upon that the Department of Probation's position is that Mr. Nembhard has eight (8) criminal history points resulting in a criminal history of four (4). The result is that the PSR has found the applicable sentencing range to be thirty seven (37) to forty six (46) months. It is the Defendant's position that Probation's analysis results in an exaggerated criminal history. Mr. Nembhard was arrested on the instant matter in June of 2007, beyond the ten (10) year period (see 4A1.2(e)(2)) that increases the criminal history calculation. However, the nature of the offense allows the Court to consider it a continuing offense and thus subject to this enhancement inspite of the fact that Mr. Nembhard was not charged until 2007.

On December 10th 2007, the Department of Probation issued a revised report which recalculated the Defendant's criminal history points to total ten (10) (see par. 52) resulting in Mr Nembhard's criminal history category increased to five (5) (as opposed to four (4) in the initial PSR; and three (3) which was the Government's position in their Pimental letter.) This results in a newly calcutlated position by the Probation Department that Mr. Nembhard faces a sentence of forty six (46) to fifty seven (57)

---

[2] Mr. Nembhard has approximately ten (10) misdemeanor marijuana convictions which for the most part resulted in a sentence of a fine. Pursuant to U.S.S.G. 4A1.1(c) he can receive a maximum of four (4) criminal history points for these convictions. This results in a number of the convictions not being counted for criminal history purposes.

months. Apparently the Department of Probation's position is that Mr. Nembhard's marijuana conviction in the year 2000 for which he received a sentence of a conditional discharge results in an enhancement of two (2) levels under U.S.S.G. 4A1.1.(d). The Department of Probation claims this section and the enhancement are applicable because the immigration offense occurred during the time Mr. Nembhard was conditionally discharged. Thus, Probation's calculation of a sentencing exposure of forty six (46) to fifty seven (57) months of incarceration is apparently premised on the fact that Mr. Nembhard is charged with illegal entry and thus is technically in violation of the law everyday he is in the United States. Although no new federal crime is committed and no additional act in furtherance of the illegal entry is committed he is given an additional two (2) criminal history points pursuant to U.S.S.G. 4A1.1(c) solely due to his immigration status. The result is that he is receiving additional punishment although he has not committed any additional acts regarding the underlying crime, illegal entry, purely because of his status. Simply put Mr. Nembhard is subject to receiving additional punishment because he entered the country on a certain date and because he remained in the country during a subsequent sentence of a conditional discharge. Equity and fairness suggest that the defendant should not suffer the enhanced punishment of both of these aggravating factors which result in additional punishment. In terms of determining the appropriate adjusted offense level, we ask this Court to consider a major disparity between available sentences in this District and those under the auspices of the "fast track" programs where the defendant is given a four point reduction in his/her offense level based upon a plea of guilty. That program has been authorized by the Attorney General in thirteen (13) of the ninety-four (94) Federal Districts. It has not been authorized in the Southern District of New York. However, pursuant to Gall v. United States, 128 S.Ct. 586 (2007) the Court is no longer bound by the guidelines and may consider all of the relevant factors under 18 U.S.C. 3553 (discussed in further detail herein) one of which is uniformity. Accordingly, we request that the Court consider the Department of Justice's authorization and Courts' sentencing departures under the "fast track" program and reduce Mr. Nembhard's offense level when determining a reasonable sentence.

    The Second Circuit has dealt with this issue in two recent matters. In United States v. Liriano-Blanco, 510 F.3d (168 (2nd Cir.2007)), the Court left the door open as to whether the District Court has the authority to impose a non-Guidelines sentence in response to the fast track-track sentencing disparity if it deems such a reduced sentence is warranted. In fact, in discussing United States v. Mejia, 461 F.3d 168 (2nd Cir.2006) where the Court held that the sentencing court is not required to consider the "fast-track" disparity, it stated "we did not foreclose the possibility that a court has a legal authority to impose in its discretion, a non-guidelines sentence on that basis". Id. at 172. Similarly in United States v. Ramirez-Sucar, 517 F.3d 69 (2nd Cir. 2008) where the Court held that the sentencing court is not required to consider the "fast-track" disparity as a grounds for a non-guidelines sentence, it did not specifically preclude it. Accordingly, we request the Court consider the "fast-track" disparity as a grounds for a non-guideline sentence and/or a basis in a reduction to his offense level. Mr. Nembhard should not treated differently because he was arrested and prosecuted in a district that

does not have this sentence mitigating program available to it. If sentencing uniformity is something that Congress and the Department of Justice considers an important policy we would ask the Court sentence Mr. Nembhard accordingly, granting him a reduction in his adjusted offense level.

The guidelines are just one factor in considering an appropriate sentence. We ask the Court to consider all of the factors delineated pursuant to Section 3553(a)(1) We have submitted the annexed letters to provide a more complete description of Mr. Nembhard and ask the Court to consider a sentence that comports with the dictates of all the 18 U.S.C. 3553(a) paying particular attention to the nature and circumstances of the crime committed in conjunction with the aggravating factors which exaggerate Mr. Nembhard's criminal history. Section 18 U.S.C. 3553(a) reads in part;

> "(a)  Factors to be considered in imposing a sentence --The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–
>
> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)  the need for the sentence imposed;
> to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)A  to afford adequate deterrence to criminal conduct;
>
> (B)B  to protect the public from further crimes of the defendant; and
>
> (B)C  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)  the kinds of sentences available;
>
> (4)  the kinds of sentence and the sentencing range established for-.
>
> (A)  the applicable category of offense committed by the applicable category as set forth in the guidelines issued by the Sentencing Commission. . . ."

In considering the statute, we understand that punishment is necessary for general and specific deterrence as it applies to Mr. Nembhard. However, Mr. Nembhard has spent a considerable time incarcerated and has suffered serious

consequences for his transgression of the law. He does not pose a threat to the community and when released will pursue lawful employment in Jamaica.

Mr. Nembhard accepts full responsibility for his actions. He understands his culpability and expresses remorse for his illegal conduct. He entered this country, not for the purpose of committing crimes, but to obtain lawful employment for the purpose of supporting his family. The income he was earning in Jamaica was insufficient to support his family; working here gave him the opportunity to provide greater support for his family. Mr. Nembhard clearly and unequivocally understands that this does not provide an excuse but explains why he entered this country after he was excluded and what his intentions were while he was here. He understands that he will be deported after he finishes the sentence of the Court. Similarly, he understands that he cannot return to the United States without receiving permission to enter this country. He now knows that such entering this country illegally carries a very serious penalty. The time he has spent incarcerated has had a very strong deterrent effect and provided adequate punishment for the acts he committed. Indeed, Mr. Nembhard understands that his conduct of entering the United States has financially and emotionally hurt his family, not helped it. His incarceration has been a strong lesson of the penalties one can suffer when breaking the law and it is a potent deterrent from him returning to the United States without permission from the appropriate authorities.

The attached letters are clear reflections of Mr. Nembhard. They paint a picture of the person whom the Court is going to sentence. He is very caring and considerate of others. He is a peacemaker in his community and his door is always open to those in need. Mr. Nembhard is and has always been hardworking and supportive, both financially and emotionally, to all his children. He has always worked hard to support his loved ones. He and his family have suffered greatly as a result of his conviction and incarceration. His past narcotics convictions are clear exhibits of his faults and the attached letters clearly demonstrate that Mr. Nembhard has worked hard to overcome those problems. His friends and family are aware of his rehabilitation and will be there to support him. Mr. Nembhard is a good man who has made mistakes, but he is prepared to address them and receive his punishment.

Mr. Nembhard has health related issues that make incarceration particularly difficult, since his incarceration he has been under the care of a physician and has received approximately ten (10) different prescriptions to deal with his chronic hereditary high blood pressure and his kidney problems for which he has been hospitalized in the past. His health is of great concern to him and his family and although he has received medical attention while incarcerated he has health status ois of great concern to him and his family. The stress and pain of his incarceration has not helped his ailments,indeed there is no greater medicine than the return of Mr. Nembhard to his loving family.

Mr. Nembhard is almost forty five (45) years old and he knows that he has violated the law and understands that he is not welcome in the United States. He is

prepared to return to Jamaica to raise his family and provide them with whatever support he can give them. Based upon the arguments made herein as to the inequity of the guidelines, sentence disparity and the attached letters, we ask the Court to sentence him to a reasonable and fair sentence which will serve the society and provide some level of mercy to my client and his family.

We thank the Court for considering this application.

Respectfully submitted;

PAPA, DEPAOLA AND BROUNSTEIN

BY: STEVEN L. BROUNSTEIN